**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BALDWIN, HASPEL, BURKE & MAYER, LLC** | **Case No.: 2025-cv-1263** |
| *Plaintiff* | **Division** |
| | **District Judge** |
| **v.** | |
| | **Magistrate Judge** |
| **IRON MOUNTAIN INFORMATION MANAGEMENT, LLC** | **JURY TRIAL DEMANDED** |
| *Defendant* | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES</u>

Plaintiff Baldwin Haspel Burke & Mayer LLC, through undersigned counsel, hereby files the following Complaint for Declaratory Judgment and Damages against Iron Mountain Information Management, LLC.

### <u>INTRODUCTION</u>

1.      This Complaint arises out of a long-standing pattern and practice of Iron Mountain Information Management, LLC ("Iron Mountain") to overcharge its customers by failing to abide by the terms of its own contracts; using delay and confusion in order to increase billings; and then refusing to release customers' records until the unjustified and exorbitant invoices are paid. As many in the legal community are aware, Iron Mountain was the go-to business for storage of off-site client files with law firms throughout this country utilizing their services. Baldwin, Haspel, Burke & Mayer LLC ("Baldwin Haspel") was one such law firm. However, since the closure of Baldwin Haspel in 2022, Iron Mountain has done everything possible to overcharge for its services and then obfuscate those charges, including failing to respond to correspondence; failing to send invoices; unilaterally increasing prices contrary to the terms of the contract between Iron Mountain and Baldwin Haspel; and finally refusing to release Baldwin Haspel's client files until it pays an exorbitant and false invoice.

2.      Unfortunately, Baldwin Haspel is not alone in this experience. Upon information and belief, there are dozens, if not hundreds, of similar lawsuits filed across the country against Iron Mountain, including a suit in this District by the McGlinchey Stafford law firm as a result of Iron Mountain's failure to release that firm's records and for exorbitant overcharges.

1

3.    This pattern and practice of delay and willful overcharging are unfair and deceptive acts in plain violation of its contractual obligations to Baldwin Haspel and Louisiana's Unfair Trade Practices Act. Through this action, Baldwin Haspel seeks a declaratory judgment from this Court that no amounts are due and owing by it and that Iron Mountain must release the firm's files as well as damages for Iron Mountain's breaches of contract and its violations of the Louisiana Unfair Trade Practices Act.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00 and because the parties are citizens of different states.

5.    The events giving rise to this lawsuit, including the execution of the contract at issue, occurred in the city of New Orleans, Louisiana, Parish of Orleans, which sits in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

6.    Iron Mountain is subject to this Court's personal jurisdiction with respect to this action.

## PARTIES

7.    Plaintiff Baldwin Haspel Burke & Mayer, LLC ("Baldwin Haspel") is a limited liability company organized and existing under the laws of the State of Louisiana with its principal place of business in this District. All of its members are citizens of Louisiana.

8.    Defendant Iron Mountain Information Management LLC ("Iron Mountain") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in New Hampshire.  Upon information and belief, the members of Iron Mountain are citizens of states other than Louisiana. Iron Mountain is licensed to do business in this District and does in fact conduct business regularly in this District.

## FACTUAL BACKGROUND

9.    For several decades, Baldwin Haspel utilized the services Iron Mountain and its predecessor(s), for storage of its off-site client files. When client files were closed, Baldwin Haspel would move those files to Iron Mountain for storage in order to retain those in compliance with the firm's record retention practices and professional responsibilities.

10.     Baldwin Haspel signed several contracts with Iron Mountain over the years with the last contract signed in 2019 having an effective date of October 1, 2019 (hereinafter the "2019 Contract").

11.     Importantly, the pricing under the 2019 Contract was outlined in Schedule A which was referenced and incorporated into the 2019 Contract. Despite repeated requests for a copy of Schedule A, Iron Mountain has been unable or unwilling to provide Baldwin Haspel with the operative Schedule A.

12.     In February 2022, Baldwin Haspel ceased operations as a law firm with several of its partners retiring and others going to work with other firms in the New Orleans area. Several of those partners joined the Liskow & Lewis law firm which Iron Mountain was well aware of because they sent many of Baldwin Haspel's boxes to Liskow's offices. Between February 2022 and January 2023, former partners of Baldwin Haspel continued to pay invoices to Iron Mountain from their new firms.

13.     Beginning in late 2022 and continuing through 2023 and 2024, the former Baldwin Haspel partners attempted to work with Iron Mountain to retrieve files and more importantly, destroy decades of files that were no longer needed. Despite the fact that the sole purpose of the 2019 Contract was for Iron Mountain to store files, Iron Mountain failed to provide an accurate and comprehensive list of the Baldwin Haspel it was storing. This failure was not only a breach of its obligations under the 2019 Contract, but upon information and belief, was a calculated strategy designed to impede Baldwin Haspel's retrieval of its files thereby increasing the fees that it would later demand from Baldwin Haspel.

14.     After January 2023, Iron Mountain stopped issuing invoices to Baldwin Haspel which was consistent with Baldwin Haspel's belief that the relationship between Baldwin Haspel and Iron Mountain would be over as soon as their files were retrieved or destroyed. Iron Mountain created a maddening process for Baldwin Haspel to submit the list of files to be destroyed by repeatedly providing erroneous and inconsistent lists of the boxes and files that were in Iron Mountain's storage; requiring Baldwin Haspel to resubmit and reformat its lists no less than three times (which were hundreds of pages in length due to the amount of files stored at Iron Mountain) and then failing to respond to inquiries for several months. It is now apparent that this was a common practice for Iron Mountain designed to force law firms to incur additional fees that Iron Mountain would then require to be paid before files would be released or destroyed.

15.    After months of delay and fruitless communications, on April 26, 2024, representatives of Baldwin Haspel received an email from a representative of Iron Mountain regarding thirteen months of outstanding invoices, none of which had previously been provided to Baldwin Haspel.

16.    These allegedly past due invoices contained significant increases for the per cubic foot price for document storage, none of which had been communicated to Baldwin Haspel in violation of the 2019 Contract's provisions which permitted rate adjustments by Iron Mountain only upon thirty days' written notice to Baldwin Haspel.

17.    On May 28, 2024, a representative of Baldwin Haspel responded to the April 26, 2024 email with a proposal to pay off the outstanding amounts (at the pricing provided for in the 2019 Contract) and requesting to again close storage with Iron Mountain. Iron Mountain received this proposal; yet the representative who was purportedly assigned to resolve this matter with Baldwin Haspel never acknowledged receipt and sent a form follow up email on July 8, 2024 "doing a follow up on the payment of the past due invoices."

18.    Then in August 2024, a "supervisor" was allegedly assigned to the Baldwin Haspel case. Thereafter, Baldwin Haspel continued to receive emails from Iron Mountain that their case had been assigned to various other representatives and teams including "leadership" for resolution, but no resolution followed.

19.    After August 2024, Iron Mountain continued to engage in tactics designed to intentionally delay to force Baldwin Haspel to incur additional fees which included failing to respond to emails or telephone calls from Baldwin Haspel for months; scheduling "conferences" with Baldwin Haspel representatives but never providing dial in information for those conferences; ostensibly sending Baldwin Haspel's case to "supervisors" who never responded or may never have existed at all; failing to acknowledge repeated correspondence from Baldwin Haspel and/or only responding to simple requests after many months; and continuing to provide inaccurate information about the firm's boxes and files stored at Iron Mountain.

20.    As another example, in November 2024, Baldwin Haspel received an email from an Iron Mountain representative who identified herself as a "Senior Customer Development Advisor" "newly assigned to your Iron Mountain account to support you from a strategic perspective."

4

21. When the Baldwin Haspel representative responded to that email that "our contract terminated with Iron Mountain more than a year ago," he received a nonsensical response from this "Senior Customer Development Advisor" who did not acknowledge the account closure request and was not heard from again after November 2024.

22. Iron Mountain's unscrupulous, unfair and duplicitous practices continued and in April 2025 it provided Baldwin Haspel with a "Closing Cost Summary" which demanded that Baldwin Haspel pay nearly $200,000.00 to Iron Mountain before Iron Mountain would release the client files that it is holding. Not only were the inflated past due amounts included in that Closing Cost Summary, but Iron Mountain attempted to charge Baldwin Haspel for certain charges according to a 2025 Schedule A rather than the operative Schedule A under the Contract; fees for early termination of the 2019 Contract that Baldwin Haspel had repeatedly cancelled, but Iron Mountain never acknowledged; and additional costs that were duplicative and unnecessary.

23. As a result of Iron Mountain's unfair practices, Baldwin Haspel was left with no choice but to file suit in order to obtain the release of its files.

## COUNT I
### Breach of Contract

24. Baldwin Haspel realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

25. Baldwin Haspel and Iron Mountain were signatories to the 2019 Contract.

26. Iron Mountain's obligations under the 2019 Contract were to store the files entrusted to it by Baldwin Haspel and to deliver those files to Baldwin Haspel upon request.

27. Iron Mountain's conduct as set forth herein was in violation of its contractual obligations to Baldwin Haspel and caused damage to Baldwin Haspel. *See* La. Civ. Code art. 1994.

## COUNT II
### Violation of the Louisiana Unfair Trade Practices Act

28. Baldwin Haspel realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

29. Baldwin Haspel is a "consumer" who uses and purchases the services of Iron Mountain as defined by the Louisiana Unfair Trade Practices Act. La. Rev. Stat. § 51:1402(1) and (8).

30.     Under LUTPA, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A).

31.     LUTPA provides for a private right of action for those who suffer "any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. Rev. Stat. § 51:1409(A).

32.     Iron Mountain engaged in unfair and deceptive acts by, *inter alia*, knowingly overcharging Baldwin Haspel for storage and other fees; intentionally failing to provide contemporaneous invoices to Baldwin Haspel for services provided; intentionally failing to timely communicate with Baldwin Haspel or respond to its request for account closure; intentionally transferring Baldwin Haspel to different representatives and/or departments who were unable or unwilling to resolve the billing issues or close Baldwin Haspel's account; and intentionally refusing to release Baldwin Haspel's boxes unless it paid an inflated and erroneous "Closing Cost" invoice.

33.     Iron Mountain's unfair and deceptive acts are a pattern and practice on behalf of Iron Mountain designed to force law firm customers into paying exorbitant fees in order to get Iron Mountain to release the client files held in storage by Iron Mountain.

34.     Iron Mountain's unfair and deceptive acts were material and caused Baldwin Haspel damages.

35.     As a result of Iron Mountain's violations of LUTPA, Baldwin Haspel is entitled to actual damages, treble damages, together with costs and reasonable attorneys' fees.

## COUNT III
### Declaratory Judgment

36.    Baldwin Haspel realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

37.    Beginning in 2022, Baldwin Haspel repeatedly informed Iron Mountain that it wished to terminate the 2019 Contract and retrieve and/or destroy its files. Iron Mountain repeatedly and willfully ignored that request.

38.    Baldwin Haspel seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 determining the following:

    a.    Baldwin Haspel has no obligations to Iron Mountain under the 2019 Contract;

    b.    Iron Mountain is barred from charging Baldwin Haspel additional costs, surcharges, late fees or other fees for the storage, removal and destruction of Baldwin Haspel's boxes or to close its accounts;

    c.    Iron Mountain is required by this Court to timely release or destroy Baldwin Haspel's boxes in accordance with Baldwin Haspel's written instructions.

39.    Baldwin Haspel demands a jury trial on all issues so triable.

WHEREFORE, Baldwin Haspel Burke & Mayer LLC prays that defendant Iron Mountain Information Management, LLC, be duly served and cited with a certified copy of this pleading and that after all legal delays and due proceedings are had, there be judgment rendered herein as follows:

    a.    Judgment in favor of Baldwin Haspel that the 2019 Contract is terminated and that Baldwin Haspel has no obligations to Iron Mountain;

    b.    Judgment in favor of Baldwin Haspel that Iron Mountain is barred from charging Baldwin Haspel additional costs, surcharges, late fees or other fees for the storage, removal and destruction of Baldwin Haspel's boxes or to close its accounts;

    c.    Judgment in favor of Baldwin Haspel that Iron Mountain is required by this Court to timely release and/or destroy the files of Baldwin Haspel in accordance with its written instructions;

    d.    Judgment against Iron Mountain awarding Baldwin Haspel damages for Iron Mountain's breach of the 2019 Contract;

    e.    Judgment against Iron Mountain awarding Baldwin Haspel damages, including costs and attorneys' fees, caused by Iron Mountain's violations of the Louisiana Unfair Trade Practices Act; and

    f.    Such other and further relief as the Court may deem just and proper and to which Baldwin Haspel is entitled.

Respectfully Submitted


*/s/ Catherine E. Lasky*

Catherine E. Lasky, TA (La. Bar 28652)
Katie Lasky Law LLC
619 Homedale Street
New Orleans, LA 70124
P: (504) 584-7336
F: (504) 375-2221
katie@katielaskylaw.com

*Attorney for Baldwin Haspel Burke & Mayer LLC*